# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE CRANDLE (A-81245), | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 11 C 4069 |
| v | ) |
| | ) Judge Ronald A. Guzmán |
| WILLIE FOX, JOSEPH PATE, T. WILLIAMS, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence Crandle, an Illinois prisoner currently confined at the Illinois River Correctional Center, initiated this 42 U.S.C. § 1983 action against Parole Officers Willie Fox, Joseph Pate, and T. Williams. Plaintiff alleges that, on October 22, 2008, Defendants Fox and Pate used excessive force while visiting Plaintiff at his home. Officer Williams allegedly witnessed the use of excessive force but did not intervene. Plaintiff was later convicted of two counts of aggravated battery based on events that occurred during Fox and Pate's visit and sentenced to 12 years of imprisonment.

Currently before the Court is Defendants' motion for summary judgment. They argue that Plaintiff's § 1983 action is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). They also contend that Williams did not witness the use of any excessive force. Plaintiff has responded. For the reasons stated herein, the Court denies Defendants' summary judgment motion.

## FEDERAL AND LOCAL RULES FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When determining the existence of a genuine issue of material fact, a court construes facts in a light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact and that judgment based upon the uncontested facts is warranted. *Celotex*, 477 U.S. at 325. If the movant meets this burden, the nonmoving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted). A genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *Anderson*, 477 U.S. at 222.

Because Plaintiff is a *pro se* litigant, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2. (R. 65.) In response to Defendants' motion for summary judgment and statement of facts, Plaintiff filed his own motion and statement of facts. Because Plaintiff's motion and statement of facts is actually a response to Defendants' motion, the Court has construed it as such. Considering the parties' Local Rule 56.1 statements and summary judgment materials, the Court turns to the facts of this case.

# FACTS

On October 22, 2010, Plaintiff was on mandatory supervised release ("MSR") after having served a term of imprisonment for burglary. (Defs.' SOF ¶ 10; Pl.'s SOF ¶ 10.) There are several rules associated with MSR, one of which is that the individual on MSR is subject to visitation by parole officers. (Defs.' SOF ¶ 11; Pl.'s SOF ¶ 11.)

Fox became Plaintiff's parole officer shortly before October 21, 2010. (Defs.' SOF ¶ 12.) According to Plaintiff, on October 21, 2010, his prior parole officer, Ms. Gillan, instructed him to contact Fox. (Pl.'s SOF ¶ 13.) Plaintiff states that he called Fox, identified himself, explained that he was told to contact him and asked what happened to Ms. Gillan. (*Id.*) According to Plaintiff, Fox rudely told Plaintiff that he needed no explanation and informed him that Fox was scheduling a face-to-face meeting for the following day. (*Id.*) When Plaintiff replied that he was scheduled to work, Fox allegedly became angry and told Plaintiff that he would visit the next day but would not specify a time. (*Id.*)

On the morning of the following day, October 22, 2010, Plaintiff called the Illinois Department of Corrections ("IDOC") to speak to a supervisor about Fox. (Pl.'s SOF ¶ 14.) The IDOC operator placed Plaintiff on hold, then returned to say that she had Plaintiff's parole officer on the line. (*Id.*) Plaintiff, however, did not want to talk to Fox and hung up upon hearing that he on was on the phone. (*Id.*) Fox and Pate visited Plaintiff forty-five minutes later. (*Id.*)

At the time of Fox and Pate's visit, Plaintiff was living with Cheryl Shelton and her daughter Laressa Adams. (Defs.' SOF ¶¶ 8-9; Pl.'s SOF ¶¶ 8-9.) Shelton's apartment is on the second floor of a two-story building. To access the apartment, one must go through two doors,

3

one at the street level and another at the landing of the apartment. (Defs.' SOF ¶ 15; Pl.'s SOF ¶ 15.) The apartment has three bedrooms, a kitchen, and a front room. (Pl.'s SOF ¶ 16.) Plaintiff was in the back bedroom, about 30 feet from the front door, when Fox and Pate arrived. (Defs.' SOF ¶ 16; Pl.'s SOF ¶ 16.)

According to Fox and Pate, a woman (Laressa Adams) answered the door and they told her they were looking for Plaintiff. (Defs.' SOF ¶ 17.) The woman yelled toward the back of the apartment, "Larry's people are here." (*Id.*) According to Plaintiff, Adams testified at Plaintiff's criminal trial that she looked through the peep hole of the door, saw Fox and Pate, yelled out that "Larry's people" were there, and cracked opened the door to tell the officers that Plaintiff would let them in. (Pl.'s SOF ¶ 17; R. 66, Ex. I, Trial Tr. at 169-71.) Adams testified that the officers pushed open the door, stating they were coming in. (R. 66, Ex. I, Trial Tr. at 169-72.) Upon hearing that officers were there, Plaintiff exited the back bedroom and while approaching the front door, saw someone looking around the corner of the foyer wall. (Defs.' SOF ¶ 18; Pl.'s SOF ¶ 18.)

The parties differ as to what occurred next. Referring to Fox's testimony at Plaintiff's criminal trial, Defendants state that Plaintiff "aggressively approached by storming" toward Fox. (Defs.' SOF ¶ 24; R. 66, Ex. I, Trial Tr. at 41.) Fox directed Plaintiff to stop but Plaintiff refused to comply, stated that the officers had no right to be there, and asked "What the fuck is this?" (Defs.' SOF ¶ 24.) Fox further testified that he instructed Plaintiff to turn around so he could be cuffed, but Plaintiff refused and instead drew his arm back and struck Fox in the chest with a closed fist. (*Id.* ¶¶ 24-25.) According to Fox's trial testimony, he and Pate attempted to restrain Plaintiff who began punching, swinging, and kicking both officers. (*Id.* ¶ 26; R. 66, Ex.

4

I, Trial Tr. at 45.) Fox testified that the officers told Plaintiff to calm down and stop resisting and held him against a wall to apply handcuffs, and while doing so, the three fell to the floor. (Defs.' SOF ¶ 27; R. 66, Ex. I, Trial Tr. at 46.) Fox also testified that he felt a pinch on his right hand while it was near Plaintiff's mouth. (Defs.' SOF ¶ 28; R. 66, Ex. I, Trial Tr. at 47.) According to Fox's trial testimony, the officers finally cuffed Plaintiff, Pate called for assistance, and as the officers and Plaintiff exited the apartment, they were met by Williams in the hallway of the building. (Defs.' SOF ¶¶ 29-30, R. 66, Ex. I, Trial Tr. at 46, 102.) According to Williams, she did not see the struggle between Plaintiff, Fox, and Pate, but arrived after Plaintiff was cuffed. (Defs.' SOF ¶ 31.) Williams asked if she should mace Plaintiff, but no mace was used. (*Id.* ¶ 32.) As Fox and Pate escorted Plaintiff down the hallway, Williams yelled out that Plaintiff had something in his hand, which Plaintiff states was a face towel. (*Id.* ¶ 33.)

Plaintiff disagrees that he aggressively stormed toward Fox, used profanity, struck Fox on the chest, or that he bit Fox on his hand. (Pl.'s SOF ¶¶ 24-28.) According to Plaintiff, Fox, with Pate following, approached Plaintiff. (*Id.* ¶ 19.) When they were four or five feet away from each other, Fox yelled for Plaintiff to stop. (*Id.* ¶ 20.) Plaintiff asked what was going on. (*Id.*) Fox began cursing, saying he didn't have to explain anything, and told Plaintiff to turn around to be cuffed. (*Id.*) According to Plaintiff's deposition testimony, Plaintiff asked why he had to turn around, and Fox reached out toward Plaintiff, who moved his hand, at which time Fox grabbed Plaintiff around the neck. (*Id.* ¶ 21.) Plaintiff's deposition further states that, while Fox was choking him, Pate kneed Plaintiff's side, and both officers then pushed Plaintiff up against the wall. (*Id.* ¶ 22.) According to Plaintiff, after the officers handcuffed him while he

5

was up against the wall, they pulled him from the wall, slammed him onto the floor, and put their knees on his back applying pressure to his chest and neck. (*Id.*) Plaintiff contends that he never hit or bit either officer. (*Id.* ¶ 23.)

The parties also differ as to when Williams arrived and whether she saw any use of force. According to Defendants, Williams arrived after Plaintiff was handcuffed and saw no use of force. (Defs.' SOF ¶ 30.) Defendants contend that she remained in the building hallway outside the apartment, and thus would not have seen any of the struggle between Fox, Pate, and Plaintiff. (*Id.*) Plaintiff, however, notes that Williams' incident report states that when she arrived on the scene, she saw a woman standing in the living room pointing down the hallway and "immediately went to assist agents, [because] the parolee was still being combative after being placed into handcuffs." (Pl.'s SOF, Ex. D, R. 69, PageID # 388.) According to Plaintiff, Williams witnessed Fox and Pate using force. (Pl.'s SOF ¶¶ 30-33.)

Plaintiff was charged with aggravated battery of Fox and Pate. (Defs.' SOF ¶ 34; Pl.'s SOF ¶ 34.) At Plaintiff's criminal trial, Fox, Pate, Cheryl Shelton, and Laressa Adams testified. (R. 66, Ex. I, Trial Tr.) Plaintiff was convicted of two counts of aggravated battery of a law enforcement officer while in the performance of his duties and was sentenced to twelve years imprisonment. (Defs.' SOF ¶ 52; Pl.'s SOF ¶ 52.) Plaintiff's conviction has not been overturned. (*Id.*)

## ANALYSIS

**Plaintiff's Claims Against Officers Fox and Pate**

Defendants contend that Plaintiff's version of the facts supporting his excessive force claims are incompatible with his conviction of two counts of aggravated battery of a law

6

enforcement officer. According to Defendants, if Plaintiff successfully proves his allegations and his version of the facts is true, it would necessarily imply the invalidity of his aggravated battery conviction.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that, "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

A conviction of battery of a police officer does not necessarily bar a § 1983 claim of excessive force stemming from the same incident, "so long as the § 1983 case does not undermine the validity of the criminal conviction." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008); *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005). Where, however, the facts alleged by a § 1983 plaintiff contradict or necessarily imply the invalidity of his conviction, the claim is barred by *Heck*. *Moore v. Mahone*, 652 F.3d 722, 723-24 (7th Cir. 2011); *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). In *Moore*, a prisoner could not proceed with his § 1983 claim that a prison guard used excessive force against him where the prisoner asserted that he committed no battery on the guard to justify any use of force in response. *Moore*, 652 F.3d at 724-25. Moore could have argued that officers overreacted to his battery of the officer, which may not have necessarily implied the invalidity of his battery disciplinary conviction; however, because Moore persisted with his claim that he committed no battery to justify any use of force and his version of the facts was incompatible with his prison

7

disciplinary offense of battery, his § 1983 claim was barred by *Heck*. *Id.*

In the instant case, Plaintiff's version of the facts about how the altercation between him, Fox and Pate began, if successful, would clearly call into the question the validity of his battery-of-an-officer conviction. Plaintiff denies that he struck or tried to strike either officer and that, after he pulled his hand away when Fox reached for it, Fox grabbed Plaintiff around the neck and began choking him. Plaintiff cannot proceed with his claim that Fox and Pate's use of force was unprovoked by any battery by Plaintiff.

However, *Heck* does not bar his claim that the officers used excessive force after Plaintiff's purportedly aggressive conduct ended. The Seventh Circuit's decision in *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), is instructive on this point. In *Evans*, officers barged into the plaintiff's apartment where he was believed to be strangling someone. According to the officers, Evans resisted arrest and had to be subdued. The evidence indicated that he was beaten before and after being subdued. Evans was subsequently convicted of attempted murder and resisting arrest. *Id.* at 363. He later brought a § 1983 action, arguing that: (1) he did not resist arrest, (2) he was beaten while officers effected custody over him, and (3) officers beat him after they reduced him to custody. The Seventh Circuit noted that only Evans' first contention, that he did not resist arrest, was barred by *Heck*, but that success on claim (2) and (3) was not dependent on success as to claim (1) and would not imply that his resisting arrest conviction was invalid. *Id.* at 364.

Plaintiff, in his response to Defendants' summary judgment motion, seeks to challenge his conviction as he denies hitting either officer, alleges the officers falsely reported that Plaintiff struck Fox, and contends that the officers falsely testified at Plaintiff's criminal trial.

8

(R. 70 at 6.)  This case, however, is not limited to only the acts precipitating the physical altercation between Plaintiff and Fox and Pate.  According to Plaintiff, even after he was handcuffed, the officers slammed him onto the floor, kneed his back, and applied pressure to his neck.  (Defs.' SOF ¶ 22; Pl.'s SOF ¶ 22.)  Moreover, Plaintiff states he was picked up off the floor by being grabbed around the neck and Fox and Pate then escorted him from the apartment to the police car by both officers holding him around the neck.  (R. 66, Ex. C, Pl.'s Dep. at 37-39.)  Proof that such use of force was excessive does not mean that Plaintiff did not strike either officer and or that his conviction is invalid.  As previously noted several times by Seventh Circuit: "Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement [or in Plaintiff's case even struck an officer], he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages."  *Hardrick*, 522 F.3d at 764 (internal citations and quotations omitted).

Therefore, Plaintiff may proceed with his claims that Fox and Pate used excessive force after Plaintiff's aggressive conduct ceased.  Defendants' motion for summary judgment on these claims of excessive force is denied.

**Plaintiff's Claim Against Officer Williams:**

As to Officer Williams, there are issues of material fact regarding when she arrived on the scene and what she saw.  According to Defendants' statement of fact, Williams appeared in the hallway of the building as they were leaving and did not see any force used against Plaintiff.  (Defs.' SOF ¶ 30.)  However, as noted by Plaintiff, Williams stated in her incident report from that day that she entered the apartment and went to assist the Pate and Fox because Plaintiff "was still being combative."  (Pl.'s SOF ¶ 30; R. 69 at 17.)  In answers to interrogatories,

9

Williams further indicated that force was being used but explained: "At no time did I see unnecessary force. The only force used was necessary for the safety of the officers and to subdue Plaintiff, and effect an arrest." (Pl.'s SOF ¶ 30; R. 69 at 29 ¶ 15.)

To establish a constitutional violation based upon an officer's failure to intervene, a plaintiff must show that the officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). Whether excessive force was used during an arrest depends upon the reasonableness of the force in light of circumstances at the time. "An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009).

Based on the current record, there are disputed issues of material facts as to whether Williams witnessed any force, whether that force was excessive considering the circumstances and whether she failed to take reasonable steps to prevent it. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim against Williams is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment [63] is denied. Plaintiff may proceed with his claims that Fox and Pate used excessive force after Plaintiff's aggressive conduct ceased and that Williams witnessed Fox and Pate using excessive force but did not intervene.

The court appoints Thomas Anthony Durkin, Durkin & Roberts, 2446 North Clark Street

Chicago, IL 60614, (312) 913-9300, to represent Plaintiff in accordance with counsel's trial bar obligation under N.D. Ill. Local Rule 83.11(g). Within 21 days of the date of this order, counsel should enter an appearance for Plaintiff. A status hearing is set for July 30, 2014 at 9:30 a.m.

**Date:** July 17, 2014

                                            **Ronald A. Guzmán**
                                            **United States District Judge**